## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RONALD E. WITCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 03-CV-357-WDS |
| | ) | |
| CITY OF WOOD RIVER, CITY OF | ) | |
| WOOD RIVER POLICE DEPART- | ) | |
| MENT, GEORGE DAVID, and | ) | |
| ARTHUR CHAPMAN, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on defendants' motion for summary judgment to which plaintiff has filed a response.   Plaintiff's first amended complaint alleges that the plaintiff was incarcerated in May of 2002 in Wood River, Illinois.  Count I alleges that while incarcerated, defendant George[1] used excessive force against the plaintiff by spraying him with pepper spray without justification while plaintiff was in his cell.   Plaintiff alleges he suffered physical and emotional injuries, including burning of his eyes, emotional trauma and distress requiring medical treatment and counseling.

Count II, which details events before his incarceration, alleges that defendant Officer Chapman approached plaintiff on a parking lot and without authority arrested the plaintiff without reasonable grounds to do so.

### FACTUAL BACKGROUND

---

[1]The Amended Complaint names "George David" as the defendant in Count I.  The defendant's deposition reveals that his name is actually David Lee George, therefore, the Court will refer to this defendant as "defendant George" or "Officer George" throughout this Memorandum and Order.

1.      Events surrounding plaintiff's arrest.

The record reveals that Officer Chapman received a call from the department that a subject was causing a disturbance at a bar at the VFW in Wood River.  (Chapman depo. p. 6.) Chapman and Officer Redden responded to the call in separate vehicles. (*Id* at 7.)  Redden went into the VFW while Chapman checked the area.  Chapman observed the plaintiff walking along Edwardsville Road, (*Id.* at 8) about the time that Officer Redden relayed the description of the person who had been making the disturbance.  (*Id.* at 9.)  At that time, Chapman had been informed that the VFW was not going to sign a complaint if the plaintiff would agree not to return. (*Id.* at 9-10.)  When Chapman approached the plaintiff, he became aggressive and arrogant. (*Id.* at 10-11.)  Plaintiff admitted he had been at the VFW,  (*Id.* at 11-12) and continued to act aggressively toward Chapman and Redden, who had just arrived on the scene. (*Id.*) Chapman determined the plaintiff had been drinking, and that he could not safely walk home. (*Id.* at 12.)  The officers offered to call someone or a cab to take the plaintiff home.  The plaintiff responded by clenching his fists and moving toward the officers and refused to obtain a ride.  He was arrested by Chapman for being an intoxicated pedestrian. (*Id.* at 12-13.)

Plaintiff, in his deposition, acknowledged drinking 8 beers over a seven hour period while taking a prescription medicine, prior to going to the VFW.  He denied being drunk or intoxicated. (Plaintiff's depo. pp. 34, 44.)  He also acknowledged that was involved in an event that led to the bartender at the VFW making a call to the Wood River Police.   He stated that at approximately 7 PM he went to the VFW to check out membership and whether they had some volunteer work for him. (*Id.* at 34-35.)  When he entered the bar he was told by some of the people there that it was a "private club," and that he did not belong there.  He stated he was

2

disturbed by the treatment he received and left, but then turned around and went back in to show them his ID card. (*Id.* at 37-38.)  At that point, the bartender said she was calling the police and the plaintiff left the bar. (*Id.* at 38.)  He denied using any violence, vulgarity, yelling, or threatening anyone while in the bar. (*Id.* at 43.)

   Plaintiff stated that he knew the police would show up, so, at first, he just waited for them. (*Id.* at 41, 43.)  He then decided to get some cigarettes and a Dr. Pepper, and to walk towards his brother-in-law's house, but then turned around to go get some food at Jack-In-The-Box. (*Id.* at 45-46.)  He recalled crossing the street and saw the police come into the VFW parking lot and saw someone in front of the VFW point in plaintiff's direction. (*Id.* at 46-47.) The officer came over to him, drew his gun, then frisked plaintiff and asked him if he had been involved in a disturbance at the VFW and whether plaintiff had been drinking. (*Id.* at 47-48.)  He was then arrested for public intoxication.  Plaintiff stated that the officer told him he should have someone come pick him up, and that the officer was arrogant, but not threatening. (*Id.* at 50.)

   Plaintiff stated that the officer again asked him if he was going to call to have someone pick him up, but then opened the back door to the police car. (*Id.* at 51.) At that point, plaintiff stated "there was no way I was voluntarily going to get in that car if I didn't absolutely, positively have to." (*Id.*).[2]

## 2.   Events at the Wood River Jail

   Plaintiff stated in his deposition that during the booking procedure, he tried to concentrate on remaining calm, and that he cooperated with the booking officer. (*Id.* at 56.)  Plaintiff states that once in the cell, he tried to use the telephone to call but "the only two numbers I know

---

[2]Plaintiff said that he knew at the time that the officers had made several "mistakes" including arresting him for being an intoxicated pedestrian, and that he was not read his rights.  (*Id.* at 60-61.)

is [sic] my home phone number and the wife's cell phone.  Every time I punched up the numbers, it would come up, appears to be the wrong number.  I started to become more–I became more and more agitated.  More and more–basically, I was getting to the point of hysterical."  (*Id.* at 59-60.)    He acknowledged that while in the cell he had "extreme panic and anxiety attack," and that the more he could not get a hold of anyone, the more concerned he became.  (*Id.* at 61.)  He said that he could hear officers outside the cell door ridiculing him,[3] and that he became more upset and distraught, banged on the door and tried to explain that the telephone was not working.  At that point, he could not relax or rest and put toilet tissue on the video camera in the cell so that he could go to the bathroom in private. (*Id.*  at 63.)

He acknowledged becoming more agitated and that he unrolled the mattress and the pillow setting them down on the ground and then began banging his forearm against the door several times.  He was told to stop banging, to which he replied that he would do so if they would let him notify someone that he was there.  Later on he tried to kick the door, but stopped because it hurt his toes.  (*Id.* at 64-65.)  At this point, he was lying against the door.  Officer George came to the cell door and told him to get away from the door and that he was going to remove whatever was on the camera. (*Id.* at 65-67.)  Plaintiff stated that he was laying down with his back to the door, his feet toward the hinges of the door.  "As soon as I heard the keys and whatnot in the door, I just sort of rolled over and got my back up against the opposite wall.

---

[3]He detailed the ridicule as the officers laughing at him over the fact that he was ranting and raving at the camera because he "ran off a litany of all kinds of abuses that myself [sic] and my family had been subjected to.  My daughter being handcuffed, shackled, bound, gagged and beaten.  Police officers covering it up.  My being forced–prosecuted on 13 false criminal charges. The police officer's [sic] allowed to go ahead and continue.  Being forced to run a gauntlet of police officers in order to pick up my children for visitation.  Being pulled over, stopped, my vehicle searched for absolutely no reason. Ordered and threatened to get out of town or else. Things of that nature.  I ran off a whole litany of those." (Plaintiff's depo.  pp. 74-75)

The back and shoulders.  I was in, like, a crab position on my hands, knees and butt–or hands, knees and butt." (*Id.* at 66.)   Plaintiff said that George did not threaten him, (*id.*) but that he wanted to remove whatever was on the camera.  At that point, plaintiff says that the rolled over parallel with the bunk and was starting to get up when he was sprayed with pepper spray.  (*Id.* at 67.)  Plaintiff denies doing anything wrong when he was maced, but was only trying to get away from the door when Officer George sprayed him in the face with mace, and then left the cell with the mattress, pillow, and everything else. (*Id.*.)

Officer George was the shift commander the night of the plaintiff's arrest.  He testified in his deposition that on the night the plaintiff was arrested George was called to check out a blocked monitor and the fact that the communication part of the monitor had gone out. (George depo. pp. 7-8.)  George knew the plaintiff had been banging on the door, and that he was lying in front of the door. (*Id.* at 9.)  George stated that he warned the plaintiff that he would pepper spray him if plaintiff tried to hurt George or grab him, and that the pepper spray was out and ready. (*Id.* at 10.)  George stated that he had the pepper spray ready because the plaintiff had been cursing and threatening the police, "cops in general with physical violence."  (*Id.* at 11.)  As soon as he got into the room, he could see toilet paper on the monitor.  The sound went off when the monitor went dead. (*Id.* at 11-12).  George told the plaintiff to stay still and that he was not going to hurt him, but when George stepped over the plaintiff to remove the toilet paper the plaintiff swung at George, and George sprayed plaintiff in the face with pepper spray.  (*Id.* at 13, 14.)  George left plaintiff's cell to get a chemical agent to clean the pepper spray off, but plaintiff would not let George back in to the cell.  He was too aggressive, so George explained to plaintiff to wash his face off with running water.  George then went back into the cell, and, for security

reasons, removed the toilet paper from the camera and removed the mattress, blanket and toilet paper from the cell. (*Id.* at 15-16.)  George then tried to calm down the plaintiff, and to reason with him, but was unsuccessful.  Plaintiff continued to kick the cell door with his hands and feet, and threatened to kill all police officers. (*Id.* at 18.)

George further testified that shortly after this time the plaintiff's wife arrived and wanted to take him to a Veteran's hospital because, according to his wife, he had post-traumatic stress disorder, that he had problems with authority and hated policemen. (*Id.* at 18-19.)  A community counselor was called in to evaluate the plaintiff, who stated that the plaintiff was too drunk and they could not do anything with him because he was so intoxicated. (*Id.* at 19.)  George charged the plaintiff with obstructing a police officer and criminal damage to state supported property. (*Id.* at 19-20.)  George stated that the plaintiff was under the influence of alcohol that night, that George could smell it and the plaintiff admitted it.  In addition, he may have been under the other things.  George stated that the plaintiff,  "acted like a drunk.  And the strong smell and every-thing.  I know he had been drinking." (*Id.* at 23-24.)

Plaintiff denies that he damaged the security camera and the communications device. (Plaintiff depo. p. 77.)  Plaintiff was not charged with any offenses by the City of Wood River Prosecuting Attorney.

## ANALYSIS

Summary judgment is appropriate when "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating

that no evidence exists to support the non-moving party's contentions.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, then the non-moving party must set forth specific facts showing that there is a genuine issue of material fact requiring a jury trial. *Id*. at 324. In reviewing a motion for summary judgment, the Court must view the record and draw all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). However, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48 (emphasis in original); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (noting that court is required to draw "only those inferences that are reasonable").

Defendants seek summary judgment on several grounds.  The first is that although plaintiff has named the individual officers in Counts I and II, he is improperly attempting to hold the City and Police Department vicariously liable.   The defendants assert that plaintiff has failed to allege or establish that Wood River had a municipal policy that would have caused any infringement of plaintiff's rights, or that the City did anything itself that would have resulted in a violation of plaintiff's rights.  Particularly with respect to Count II, the count against Chapman, plaintiff does not even allege, nor argue in response to the motion, that the City or the Police Department were vicariously liable.

1.    SECTION 1983 LIABILITY

To be successful in a claim under § 1983, the Plaintiff must demonstrate that: "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir.2003) (*citing Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996)).

A.    Plaintiff's Claims Against the City and the Police Department

To bring an action against the municipality, the plaintiff must allege and show that the deprivation of rights occurred as the result of a municipal policy or custom.  The Seventh Circuit has held that:

> Unconstitutional policies for purposes of § 1983 liability fall into three categories: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Butera v.Cottey*, 285 F.3d, 601 (7th Cir. 2002) (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir.2000)) *quoted in Palmer v. Marion Co.,* 327 F.3d 585, 592 (7th Cir. 2003). Put another way, in order to state a claim against a municipality under section 1983, the plaintiff must also show that the municipality was the "moving force" behind the alleged injury "through its deliberate conduct." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). The amended complaint does not allege, nor has plaintiff argued in response to the motion for summary judgment, that there was a municipal policy, custom, or practice that would arise to a claim for municipal liability. "[M]unicipalities cannot be held liable for § 1983 claims under a theory of respondeat superior." *Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir.1999) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).   Thus, to establish

8

a genuine question of fact as to whether these government entities were deliberately indifferent to plaintiff's safety, plaintiff is required to establish that the entities have a custom or policy that contributed to the arrest and to the excessive use of force. *Garrison*, 165 F.3d at 571. "[T]here must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Here there is nothing in the record to support a claim against the municipality or the police department, or that would give rise to evidence of liability for the corporate defendants under § 1983.  Accordingly, the Court **FINDS** that the motion for summary judgment on Counts I and II as to the City of Wood River and the Wood River Police Department should be granted.

B.    Plaintiff's Claims Against the Individual Officers

It is unclear from the complaint, and the plaintiff's response to the motion for summary judgment, under what theory of liability the individual defendants are being sued.  When this is the case, the Seventh Circuit applies the following rule: "Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in [his] official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in [his] individual capacity." *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir.2000) (*citing Hill v. Shelander*, 924 F.2d 1370, 1373-74 (7th Cir.1991)). In light of the finding above where the plaintiff has not alleged that the individual defendants acted in accordance with any municipal policy, practice or custom, the Court assumes that plaintiff brings this action against the officers in their individual capacities.

9

     1.      <u>Plaintiff's Claim of False Arrest Against Defendant Chapman</u>

In order to succeed with a § 1983 claim for false arrest,[4] a plaintiff must show that the arrest was made without probable cause. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir.1996). "The existence of probable cause for an arrest is an absolute bar to a § 1983 claim for unlawful arrest." *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir.1989). While plaintiff claims that he was arrested without probable cause, all the evidence in the record is to the contrary. Plaintiff, who acknowledged he had been drinking (although claims that he was not drunk), was observed by Officer Chapman walking along the road near the VFW hall in Wood River, after being identified by people from the VFW hall as the person who had been involved in the disturbance. After being questioned by Chapman, plaintiff refused to find someone to drive him home.   Plaintiff acknowledged in his deposition that he was not going to get into the police car.  The record reveals that Chapman believed that plaintiff had been drinking and could not safely walk home.

Rule 56 provides for the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an essential element for which they bear the burden of proof at trial. In order to do so, "a party must present more than mere speculation or conjecture to defeat a summary judgment motion." *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir.1997). Where a plaintiff fails to present sufficient evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23.   Therefore, the Court **FINDS** that it is appropriate to enter summary judgment in favor of defendant Chapman on plaintiff's claim of

---

[4]Claims that arrests are made without probable cause do not raise a Fourteenth Amendment substantive due process claim, but, rather the claim would be that the constitutional right violated was the Fourth Amendment freedom from unreasonable seizure. *See Albright v. Oliver,* 510 U.S. 266, 274-75(1994).

false arrest in Count II.

2.      Plaintiff's Claim of Excessive Use of Force Against Defendant George

To state a claim under § 1983 for excessive force in violation of the Eighth Amendment, a plaintiff[5] must demonstrate that the force used was applied "'maliciously and sadistically to cause harm.'" *Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir.1994) (*quoting Hudson v. McMillian*, 112 S.Ct. 995, 999 (1992)). Not every malevolent touch by a prison guard gives rise to a claim of cruel and unusual punishment. Hudson, 112 S.Ct. 995. In determining whether the force used was "malicious and sadistic," the court must consider whether there was a need for the application of force, the relationship between the need and the amount of force used, and the extent of any resulting injury. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

An excessive force claim requires an inquiry into whether the defendant's actions were objectively reasonable in light of the totality of the circumstances confronting them, without regard to subjective intent or motivation. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir.1997). A demonstration of mere negligence is insufficient to establish an excessive force claim under § 1983. *See, e.g., Sevier v. City of Lawrence*, 60 F.3d 695, 699 n.7 (10th Cir.1995) (*citing Daniels v. Williams*, 474 U.S. 327, 331-33 (1986)); *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir.1991); *see also Roach v. City of Fredericktown*, 882 F.2d 294, 297 (8th Cir.1989).

A prisoner's exposure to pepper spray or similar chemical agents can be sufficiently serious to raise Eighth Amendment concerns. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir.1984). However, the "use of mace, tear gas or other chemical agent of the like nature when reasonably

---

[5]The applicable standard in a §1983 suit charging excessive force against a pretrial detainee, is the same as that applied to cases involving prisoners. *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir.2001).

necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhumane punishment." *Soto*, 744 F.2d at 1270.

Even considering plaintiff's claim that he was just trying to get away from Officer George at the time he was sprayed with pepper spray, under the totality of the circumstances, including plaintiff's apparent intoxicated state, his aggressive prior behavior of banging on the door, his covering of the video camera with toilet paper, and the fact that he had threatened harm to police officers while in the cell, the Court **FINDS** that the actions of defendant George were reasonable under the circumstances and were not deliberately indifferent to plaintiff. At best, the actions of George were negligent, which does not give rise to a claim of excessive use of force under § 1983.

Accordingly, the Court **FINDS** that it is appropriate to grant summary judgment in favor of defendant George and against plaintiff on the claim of excessive use of force.

<u>CONCLUSION</u>

Therefore, the Court **GRANTS** defendants' motion for summary judgment in accordance with this Order. Judgment is entered in favor of defendants the City of Wood River, City of Wood River Police Department, David George (incorrectly sued as "George David") and Arthur Chapman, and against plaintiff Ronald E. Witcher on all claims. Each party shall bear its own costs.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: May 16, 2005.**

<u>s/ WILLIAM D. STIEHL</u>

12

**DISTRICT JUDGE**